# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SOUTHERN RECYCLING, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-2197** |
| **MCALLISTER TOWING OF VIRGINIA, INC. et al.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court is Defendants McAllister Towing of Virginia, Inc.'s and McAllister Towing & Transportation Co., Inc.'s (collectively "McAllister") Motion for Partial Summary Judgment.[1] After considering the motion, the memorandum in support,[2] the record, and the applicable law, the Court will grant the motion in part and deny the motion in part.

## I. Background

### A. Factual Background

This matter arises out of a contract for towing services between McAllister and Southern Recycling, LLC ("Southern Recycling") for McAllister to tow Southern Reclycing's drydock, the SCOTIA DOCK II, from Halifax, Nova Scotia to Brownsville, Texas.[3] After receiving the SCOTIA DOCK II from McAllister in Brownsville, Texas, Southern Recycling has refused to pay McAllister, citing negligence, breach of warranty, and breach of contract by McAllister.[4] In its filings, Southern Recycling argues that McAllister breached the contract for towing services by (1) failing to name Southern Recycling as an additional assured; (2) substituting the towing boat used to tow the

---

[1] Rec. Doc. 31.

[2] Rec. Doc. 31-1.

[3] *Id.* at 1–2.

[4] Rec. Doc. 1 at 3–5.

SCOTIA DOCK II without the permission of Southern Recycling; (3) employing an unskilled crew and unfit vessel; and (4) abandoning the SCOTIA DOCK II in the Gulf of Mexico.[5]

McAllister, who is the defendant in this case, has filed its own claim for breach of contract under the towing services contract against Southern Recycling for the amount due under the contract.[6] Ultimately, McAllister claims that $820,039.06 is due pursuant to its towing contract with Southern Recycling, while Southern Recycling seeks to have damages it claims it suffered as a result of McAllister's negligence and own breach of contract offset against that amount.[7]

In this motion for partial summary judgment, McAllistter only seeks $678,818.62 of the $820,039.06 it claims Southern Recycling owes it under the towing contract, arguing that this amount is undisputed by the parties.[8] McAllister also seeks summary judgment on three claims Southern Recycling is bringing against McAllister.[9] McAllister asks this Court to dismiss (1) Southern Recycling's claim for a salvage lien against the MICHAEL J. MCALLISTER, (2) Southern Recycling's claim for breach of contract for failing to name it as an additional assured, as required under the towing contract, and (3) Southern Recycling's claim for lost revenue and/or profits for McAllister's subsequent arrest of the SCOTIA DOCK II following Southern Recycling's refusal to pay the $820,039.06 due under the towing contract.[10]

---

[5]  Rec. Doc. 53 at 7–10; *see also* Rec. Doc. 52 at 2–3, n.15; *see generally* Rec. Doc 1.

[6]  Rec. Doc. 31-1 at 1.

[7]  *Id.* at 1–2.

[8]  *Id.* at 1.

[9]  Rec. Doc. 31 at 1.

[10]  *Id.*; *see also* Rec. Doc. 31-1 at 5–8.

2

### *B. Procedural Background*

Southern Recycling filed this lawsuit on September 4, 2012.[11] In response, McAllister filed a collection suit against Southern Recycling in the Southern District of Texas. That collection lawsuit was transferred to the Eastern District of Louisiana and consolidated with the lead action on August 22, 2013.[12] McAllister also brought a limitation action in the Southern District of Texas. Like the collection action, that case was transferred to the Eastern District of Louisiana and consolidated with the lead case.[13]

Defendants filed the pending Motion for Partial Summary Judgment on December 11, 2013.[14] On March 11, 2014, Petitioners filed a response memorandum in opposition to Defendants' Motion for Partial Summary Judgment.[15] On March 19, 2014, with leave of the Court, Defendants filed a reply memorandum to Petitioners response.[16]

## II. Parties' Arguments

### *A. McAllister's Motion for Partial Summary Judgment*

McAllister argues that it is entitled to summary judgment on four issues: (1) Southern Recycling's claim for a salvage lien against McAllister's tug, the MICHAEL J. McALLISTER; (2) Southern Recycling's claim for breach of contract for additional assured status; (3) Southern

---

[11] Rec. Doc. 1.

[12] Rec. Doc. 18.

[13] *Id.*

[14] Rec. Doc. 31.

[15] Rec. Doc. 53.

[16] Rec. Doc. 63.

Recycling's claim for loss of revenue and/or profits; and (4) McAllister's claim for damages in the amount of $678,818.62 for breach of contract.[17]

Regarding the first issue, Southern Recycling's claimed salvage lien, McAllister quotes from *Benedict on Admiralty* for the proposition that "[t]he maritime law extends to the successful salvor of marine property on navigable waters, a lien upon the property saved." McAllister argues that Southern Recycling has "claimed a salvage lien against the MICHAEL J. McALLISTER for allegedly saving the SCOTIA DOCK II" but that salvage liens cannot be asserted against a vessel other than that which was saved.[18] Citing to Second Circuit caselaw, McAllister maintains that "[b]ecause 'salvage liens' cannot be asserted by analogy, [Southern Recycling] cannot assert a salvage lien against property other than that which it claims was saved."[19] Accordingly, McAllister maintains that because Southern Recycling did not save the MICHAEL J. McALLISTER, no salvage lien can be asserted against it.[20] Additionally, McAllister also claims that under maritime law "[t]here is no legal basis for claiming salvage based upon agreeing to pay others . . . to search for a lost asset when those parties fail to save the asset from a marine peril."[21] McAllister continues that such an "arrangement will not give rise to salvage (or certainly not a salvage lien against the MICHAEL J. McALLISTER) . . . ."[22]

---

[17] Rec. Doc. 31-1 at 5.

[18] *Id.* at 8 (internal quotation marks, citations, and emphasis omitted).

[19] *Id.* at 9.

[20] *Id.*

[21] *Id.* at 10.

[22] *Id.*

As for the second issue, Southern Recycling's claim that McAllister did not name Southern Recycling as an additional assured, McAllister claims that it did, in fact, name Southern Recycling as an additional assured under its insurance policies as required by the Standard Voyage Tow Agreement between it and Southern Recycling.[23]  On this basis, McAllister argues that it is entitled to summary judgment on this issue.[24]

Regarding the third issue, Southern Recycling's claim for lost revenue and/or profits, McAllister argues that Southern Recycling has continuously failed to comply with Federal Rule of Civil Procedure 26(a)(1)(A)(iii), which provides that parties present one another with "a computation of each category of damages claimed."[25] This failure, according to McAllister, "is more than sufficient to show that [Southern Recycling] cannot produce admissible evidence to support a claim for lost profits or revenue."[26] McAllister asserts that Southern Recycling has had more than ten months to produce the computation, "but has produced nothing," which precludes Southern Recycling from creating a disputed issue of material fact with respect to its claim for alleged lost profits.[27]

Moreover, McAllister argues that, under Federal Rule of Civil Procedure 37(c)(1), a party that "fails to provide information or identify a witness as required by Rule 26(a) or (e) may be sanctioned unless the failure to disclose is substantially justified or is harmless."[28] According to

---

[23] *Id.* at 12.

[24] *Id.*

[25] *Id.* (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)).

[26] *Id.*

[27] *Id.* at 12–13.

[28] *Id.* at 13 (internal quotation marks omitted)).

McAllister, the Fifth Circuit has held that "waiting until the eve of trial to disclose evidence of a damage claim is not harmless."[29] McAllister points out that under Fifth Circuit precedent, the standard for determining whether Rule 37(c) sanctions are appropriate is based on four factors: (1) the non-disclosing party's explanation for its failure to disclose the evidence; (2) the importance of the evidence; (3) the potential prejudice to the movant in allowing the evidence; and (4) the availability of a continuance.[30] According to McAllister, Southern Recycling "does not have an explanation for not producing a computation of its alleged lost profits or supporting documentation for that claim." McAllister contends that this is because "such damages simply do not exist."[31] Moreover, McAllister claims that this delay has prejudiced it in its efforts to attempt settlement and prepare for trial.[32] Also, McAllister notes that continuances have already been granted.[33]

Finally, regarding the fourth issue, McAllister's claim for $678,818.62, McAllister asserts that Southern Recycling acknowledges that it owes McAllister this money.[34] According to McAllister, Southern Recycling officer Randy Boudreaux "admitted [the invoice for $672,818.62] was for an undisputed sum owed for delivering the SCOTIA DOCK II to Brownsville."[35] Based on this, McAllister concludes that, "[s]ummary judgment is appropriate because there is no genuine

---

[29] *Id.* (citing *CQ, Inc. v. TXU Min. Co.*, 565 F.3d 268, 280 (5th Cir. 2009)).

[30] *Id.* (citing *CQ, Inc.*, 565 F.3d at 279–80).

[31] *Id.*

[32] *Id.*

[33] *Id.* at 14.

[34] *Id.*

[35] *Id.*

dispute of material fact concerning McAllister's delivery of the SCOTIA DOCK II . . . or [Southern Recycling's] refusal to pay sums that it duly acknowledges are due and owing."[36]

### B. Plaintiff Southern Recycling's Response in Opposition to Defendant's Motion for Partial Summary Judgment

Southern Recycling concedes that summary judgment is appropriate on the first two issues—its claim for a salvage lien against the MICHAEL J. McALLISTER and its claim for breach of contract for McAllister's failure to provide additional assured status.[37] Southern Recycling is no longer bringing these claims against McAllister.[38]

Regarding its claim for lost revenue and/or profits, Southern Recycling argues that "[l]oss of profit arising from a maritime casualty may be awarded as long as it is proven with reasonable certainty."[39] Southern Recycling takes issue with McAllister's argument with regards to this claim that there is no material issue of fact regarding its lost profits.[40] According to Southern Recycling, the testimony of Southern Recycling's Vice President, Robert Berry, "clearly shows that the Brownsville scrapyard had approximately 15–16 months of backlogged work."[41] As such, McAllister's decision to arrest the SCOTIA DOCK II caused a significant decline in the production of the Brownsville scrapyard because it prevented Southern Recycling from being able to work on

---

[36] *Id.*

[37] Rec. Doc. 53 at 4.

[38] *Id.*

[39] *Id.* at 5.

[40] *Id.*

[41] *Id.*

this backlog of work.[42] Southern Recycling contends that Mr. Berry's testimony thus "creates questions of material fact as to whether or not [Southern Recycling] has a claim for lost profits and revenues as a result of McAllister's breach of contract."[43]

Finally, regarding McAllister's claim for breach of contract in the amount of $678,818.62, Southern Recycling maintains that it never "admitted" that it owes this money to McAllister.[44] To the contrary, according to Southern Recycling, McAllister is attempting to use "an internal and privileged email" for this proposition.[45]  The email in question is privileged, Southern Recycling argues, because it was sent by Southern Recycling's Marine Manager, Randy Boudreaux, to Southern Recycling's attorneys in this matter.[46]

Furthermore, Southern Recycling argues that even if that email is not deemed to be privileged, Boudreaux's testimony "clearly shows that the email is not the 'admission' of liability McAllister argues it is."[47] Rather, according to Southern Recycling, the email is nothing more than "a pro forma of potential future costs created to aid [Southern Recycling] and its lawyers in understanding the 'settlement landscape' just ten days after the SCOTIA DOCK II arrived in Brownsville, Texas."[48]

---

[42] *Id.*

[43] *Id.* at 7.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.* at 8.

[48] *Id.*

Southern Recycling points to several parts of Mr. Boudreaux's deposition to reinforce this point, including Mr. Boudreaxu's answer that "[t]hese costs were merely the costs we had, the invoices we had received to date, on these, that we knew about. It wasn't necessarily an agreement that they were undisputed."[49]

### C. Defendant McAllister's Reply to Southern Recycling's Opposition

McAllister requests, first, that this Court enter summary judgment dismissing Southern Recycling's first two claims since Southern Recycling no longer contests those claims.[50] Second, McAllister argues that there is no disputed issue of material fact surrounding whether Southern Recycling lost revenue or profits for McAllister's arrest of the SCOTIA DOCK II because "[Southern Recycling] has **never** computed or disclosed a dollar amount of its lost revenue/profits despite being required to do so" by Federal Rule of Civil Procedure 26 or Federal Rule of Civil Procedure 33.[51] Moreover, McAllister claims that Southern Recycling has conceded that there is no disputed issue of material fact on this issue.[52] According to McAllister, Southern Recycling's "designated corporate representative on its damages, Randy Boudreaux, unequivocally testified that Southern had no such damages."[53] McAllister quotes from Mr. Boudreaux's deposition, in which he told McAllister's counsel that it was not Southern Recycling's intention to seek damages for lost

---

[49] *Id.* at 9.

[50] Rec. Doc. 63 at 1.

[51] *Id* (emphasis in original).

[52] *Id.* at 2.

[53] *Id.*

revenue or profit.[54] McAllister argues that Southern Recycling is bound by "its corporate representative's testimony on this issue."[55]

McAllister further argues that Southern Recycling's opposition on the issue of lost revenue and/or profit violates Federal Rule of Civil Procedure 11.[56] According to McAllister, lead counsel for Southern Recycling, Jefferson Tillery, informed McAllister that his client would not be seeking damages for lost revenue and/or profit.  As McAllister sees it, Southern Recycling "has now reversed course, and proposed to establish a fact issue with respect to its lost revenue/profits claim by alleging damages as a result of McAllister's decision to arrest the dry dock."[57]

McAllister maintains that Southern Recycling "exercised bad faith and willful abuse of the judicial process by violating agreements made on the record and retaining factual contentions regarding its lost revenue/profits claim without any evidentiary support."[58] Moreover, McAllister reiterates that Southern Recycling's claims for lost revenue and profits should be dismissed because Southern Recycling has violated Rule 37.

Finally, regarding McAllister's claim for breach of contract for $678,818.62 and the fact that in an email Southern Recycling's corporate representative allegedly admitted that Southern Recycling owes that amount to McAllister, McAllister argues that Southern Recycling waived any privilege argument because it produced the email in question in discovery, attached it as exhibits, and discussed the email at depositions without ever mentioning that the email was inadvertently

---

[54] *Id.*

[55] *Id.* at 2–3.

[56] *Id.* at 3.

[57] *Id.* at 4 (internal quotations marks omitted).

[58] *Id.* at 5.

produced or privileged.[59] Based on these facts, McAllister concludes that, "Southern bears the burden as the party seeking the privilege and has wholly failed to substantiate its claim that the document was privileged."[60]

## III. Law and Analysis

### A. Standard on Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[61] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[62] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[63] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[64]

---

[59] *Id.* at 7–8.

[60] *Id.* at 8.

[61] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[62] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[63] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[64] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

**B. Whether Summary Judgment Should Be Granted on the Issues of the Salvage Lien and Breach of Contract for Not Naming Southern Recycling as an Additional Assured**

Here, Southern Recycling does not contest summary judgment on either of these issues. After reviewing the law and the record, the Court finds that there is no disputed issue of material fact regarding whether Southern Recycling can bring a salvage lien against the MICHAEL J. McALLISTER or whether McAllister failed to name Southern Recycling as an additional assured. Based on the record, the Court finds—and Southern Recycling does not contest—that Southern Recycling cannot carry its burden at trial on either of these issues. The record is devoid of any evidence that the MICHAEL J. McALLISTER was salvaged by Southern Recycling or that McAllister did not list Southern Recycling as an additional assured. Accordingly, the Court will grant summary judgment in favor of McAllister on both of these issues.

**C. Whether Summary Judgment Should Be Granted on the Issue of Lost Revenue and Profits**

McAllister asks this Court to grant summary judgment in its favor on the question of its liability for lost revenue and/or profits to Southern Recycling for the arrest of the SCOTIA DOCK II. McAllister argues that Southern Recycling's corporate representative and Southern Recycling's counsel both acknowledged at a deposition that Southern Recycling would not pursue this claim. Moreover, McAllister argues that Southern Recycling's failure to provide a computation of these damages violates Federal Rule of Civil Procedure 37 and warrants dismissal of this claim. Southern Recycling maintains that lost production due to the arrest of the SCOTIA DOCK II creates a disputed issue of material fact precluding summary judgment on the question of lost revenue and/or profits.

Federal Rule of Civil Procedure 26(a) provides that "a party must, without awaiting a

discovery request, provide . . . a computation of each category of damages."[65] Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." While ordinarily Rule 37 sanctions are only imposed following violation of a court order, Rule 37(c) is an exception to this general requirement.[66] Rule 37(c) states that if the disclosure requirements of Rule 26 are not followed, "the court shall impose sanctions upon application or motion."[67] A district court's authority to impose sanctions under Rule 37, including default judgment and dismissal, while not unbridled is "broad."[68]

   McAllister claims that Southern Recycling had numerous opportunities and yet has failed to properly disclose the computations for its alleged lost revenue and/or profits. Rule 37 states that a court "shall" preclude use of the undisclosed evidence; the language is obligatory on the court absent a showing by the dilatory party that the delay was "substantially justified" or "harmless."[69] Here, Southern Recycling has made no attempt to make such a showing nor does it directly address the arguments raised by McAllister. Considering dismissal of a claim is a severe penalty to impose on a party, the Court needs further briefing on the issue before it is willing to do so in this case. Accordingly, based on the limited information provided to the Court on this issue, the Court denies Southern Recycling's motion for summary judgment on this issue.

---

[65] Fed. R. Civ. P. 26(a)(1)(A)(iii).

[66] *Dorey v. Dorey*, 609 F.2d 1128, 1135 (5th Cir. 1980).

[67] *Id.*

[68] *Id.*

[69] Fed. R. Civ. P. 37(c)(1).

### D. Whether Summary Judgment Should Be Granted on the Issue of McAllister's Claim for $678,818.62 in Damages for Breach of Contract

Regarding the issue of McAllister's claim for $678,818.62 in damages as a result of a breach of contract, Southern Recycling identifies facts it claims are in dispute, thereby precluding summary judgment on the issue.[70] The first issue in dispute is whether the amount claimed to be owed, $678,818.68, is in fact disputed or whether it has been admitted to. Second, Southern Recycling points to specific issues in dispute, regarding whether in fact a breach of contract occurred. Specifically, Southern Recycling argues that it is disputed whether McAllister materially breached its contract with Southern Recycling by substituting the MICHAEL J. MCALLISTER in place of the EILEEN MCALLISTER, whether McAllister materially breached its contract with Southern Recycling by allegedly employing an unskilled crew and unfit vessel, and whether McAllister materially breached its contract with Southern Recycling by abandoning the SCOTIA DOCK II in the Gulf of Mexico.[71]

After reviewing the record and the filings, the Court finds that there are issues of material fact in dispute regarding the breach of contract claim against Southern Recycling. Moreover, based on the record, the Court finds that issues of material fact exist as to whether Southern Recycling admitted to McAllister its liability for the amount in question. Accordingly, the Court concludes that genuine issues of fact preclude summary judgment on McAllister's claim for breach of contract and on whether McAllister is owed $678,818.62 in damages for breach of contract.

---

[70] *See* Rec. Doc. 53-1 at 1.

[71] Rec. Doc. 53 at 2, 10.

### IV. Conclusion

For the foregoing reasons, the Court grants summary judgment in favor of McAllister on the issues of the salvage lien and breach of contract for failing to name Southern Recycling as an additional assured. The Court denies McAllister's request that the Court impose the sanction of dismissal on Southern Recycling's claim for lost revenue and/or profits. The Court also denies summary judgment on McAllister's claim for $678,818.62 in damages relating to breach of contract for services rendered for towing the SCOTIA DOCK II from Halifax, Nova Scotia to Brownsville, Texas because issues of material fact are in dispute.

**IT IS HEREBY ORDERED** that Defendant McAllister's Motion for Summary Judgment[72] is **GRANTED in part** and **DENIED in part**.

**NEW ORLEANS, LOUISIANA**, this _29th_ day of May, 2014.


**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[72] Rec. Doc. 31.